IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| THE AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, | : : : : | |
| Plaintiff, | : : | |
| v. | : : : | CIVIL ACTION NO. 1:05-CV-1193-JOF |
| MAG MUTUAL INSURANCE COMPANY, | : : : | |
| Defendant. | : | |

## OPINION AND ORDER

This matter is before the court on Plaintiff's motion for summary judgment [7-1]; Defendant's motion for summary judgment [8-1]; Plaintiff's motion to strike [14-1]; and Defendant's motion for oral argument [17-1].

**I.   Background**

    **A.   Procedural History and Facts**

Plaintiff, The American Casualty Company of Reading, Pennsylvania, filed a declaratory judgment action against Defendant, MAG Mutual Insurance Company, seeking reimbursement from MAG Mutual for its share in defending and paying judgment in a medical malpractice claim brought against Dr. Louis M. Schlesinger and Eyesight Associates.

AO 72A
(Rev.8/82)

J.L. Gayton, M.D., P.C. provides vision care to patients under the name of Eyesight Associates of Middle Georgia. On May 21, 1995, Eyesight Associates entered into an Employment Contract with Louis M. Schlesinger, O.D., as an optometrist. The Employment Contract provided that the "[e]mployee understands that Employer shall have the exclusive authority to determine who will be accepted as a patient by the practice, to determine the duties to be assigned to Employee outside of clinical practice and patient care, and the amount of fees to be charged any patient for professional services." *See* Employment Contract, Art. VIII. The Employment Contract also stated that Eyesight Associates "provides professional malpractice insurance for its optometrists, and [Dr. Schlesinger] shall be covered under the Employer's Malpractice Insurance Plan." *Id.*, Art. XIII. At some point in 1998, Dr. Schlesinger's Employee Contract was amended to state that the "employer will pay for and carry professional liability insurance insuring the employee." *Id.*, Art. XIII.

MAG Mutual issued a Physicians and Surgeons Professional Liability Policy to Eyesight Associates for the period of July 1, 2001 to July 1, 2002. The MAG Mutual policy has limits of liability of $1,000,000 per claim or $3,000,000 in the aggregate. The MAG Mutual policy covers "claims for civil damages resulting from the providing, or failing to provide, medical professional services to patients by covered persons for whose acts [Eyesight Associates] is legally responsible." *See* MAG Mutual Policy, Coverages, § B. The MAG Mutual Policy contains a Blanket Employee Endorsement which extends coverage to

2

employees (unless otherwise excluded) while in the course of employment and working under the supervision of Eyesight Associates.

The MAG Mutual policy also contains an "other insurance" clause which states: "Insurance under this coverage is excess of and payable only after all other valid insurance and self-insurance limits of coverage have been exhausted paying settlements and judgments." *Id.* The MAG Mutual Blanket Employee Endorsement states: "This coverage is excess over other valid professional liability insurance which specifically names an individual or position." MAG Mutual provides a General Rule regarding "other insurance" which states:

> A medical practice claim that's covered under this policy may also be covered under other insurance available to you, either with this Company or other companies. Except as otherwise provided in this policy, we'll pay that portion of your loss which the Each Loss Limit of your coverage under this policy is to total of all limits that apply. But we won't pay more than the limits of your coverage under this policy.

*Id.*, General Rules.

American Casualty issued an Optometric Protector Plan to Dr. Schlesinger for the policy period of March 20, 2000 to March 20, 2001. The American Casualty policy provides professional liability coverage to Dr. Schlesinger with limits of liability of $1,000,000 per claim and $3,000,000 in the aggregate. The American Casualty policy provides coverage for "injury or damage" caused by a "professional incident arising out of the supplying of or failure to supply professional services by you or anyone for whom professional acts or omissions you are legally responsible." *See* American Casualty Policy, § I.A.

The American Casualty policy also contains an "other insurance" clause which states: "If you have other insurance which applies to the loss, the other insurance must pay first. It is the intent of this policy to apply to the amount of loss which is more than the limit of liability of the other insurance. We will not pay more than our limit of liability." *Id.*, § VI.J.

In 2002, Dawn and Bert Weaks filed a negligence action against Eyesight Associates, Dr. Schlesinger, and two other doctors at Eyesight Associates in the Superior Court of Bibb County in a case styled *Weaks v. Gayton*, Civil Action No. 02-CV-16898. The Weaks alleged that Dr. Schlesinger "acted within the scope of [his] employment with and agency of Defendant Eyesight Associates . . . . All negligence and failure to exercise the degree of care and skill required by law on the part of Defendant . . . Schlesinger . . . [is] imputable to Defendant Eyesight Associates and Defendant Eyesight Associates is liable for such negligence and failures." *See* Complaint, ¶ 29. In 2004, a jury trial was held and Dawn Weaks recovered $750,000 from Dr. Schlesinger and Eyesight Associates jointly and severally. American Casualty satisfied the judgment of $750,000 and paid the $76,415.90 in costs in defending Dr. Schlesinger.

### B.     Contentions

American Casualty argues that Dr. Schlesinger was covered by both the MAG Mutual and the American Casualty insurance policies. Both policies contain mutually exclusive excess coverage provisions. Under these circumstances, American Casualty contends, Georgia law compels that the two insurance companies share pro rata contribution. Since both

4

policies have the same policy limits, American Casualty argues that each policy should contribute 50% of the judgment and defense costs. American Casualty also seeks pre-judgment interest.

MAG Mutual responds that Dr. Schlesinger was the only named insured under the American Casualty policy and that Eyesight Associates was insured under a separate professional liability policy issued by MAG Mutual. If Dr. Schlesinger was acting within the scope of his employment, MAG Mutual argues, he could be deemed an additional insured under the MAG Mutual policy. But MAG Mutual avers that Dr. Schlesinger was not acting within the scope of his employment when he provided care to Dawn Weaks. MAG Mutual also contends that the "other insurance" clauses in the policies are not in direct contradiction, but, rather, they are distinct and establish the order of payment with American Casualty being the primary insurer and MAG Mutual the excess insurer. Since the Weaks' judgment did not exhaust the limits of the American Casualty policy, MAG Mutual argues it owes nothing as the excess insurer.

## II.   Discussion

### A.   Scope of MAG Mutual Policy

MAG Mutual argues that Dr. Schlesinger was not "intended" to be insured under the MAG Mutual policy. It claims a difference between the language in Dr. Schlesinger's Employment Contract in 1995 and that in 1998 is indicative of this intention. In 1995, the Employment Contract stated that Eyesight Associates "presently provides professional

5

malpractice insurance for its optometrists, and [Dr. Schlesinger] shall be covered under the Employer's Malpractice Insurance Plan." In 1998, apparently the relevant language became Eyesight Associates "will pay for and carry professional liability insurance insuring [Dr. Schlesinger]." MAG Mutual contends this alteration manifested the intent of Eyesight Associates and Dr. Schlesinger that Dr. Schlesinger would, after 1998, be covered through a policy secured by Eyesight Associates for him, and this is why Eyesight Associates obtained a separate liability policy for Dr. Schlesinger through American Casualty.

Setting aside the fact that Dr. Schlesinger had a separate policy with American Casualty as early as 1995, the court finds that it does not even need to reach the issue of what significance the purported change in language in Employment Contract has because the relevant contracts here are the two insurance policies. It is the terms of those policies that determine who is insured under which policy. *See Capitol Indemnity, Inc. v. Brown*, 260 Ga. App. 863, 865 (2003) (court cannot search for parties' intent outside terms of insurance contract that is clear and unambiguous). The Blanket Employee Endorsement in the MAG Mutual policy extends coverage to employees (unless otherwise excluded) while in the course of employment and working under the supervision of Eyesight Associates. *See also* Certificate of Insurance ("All employees of [Eyesight Associates] are automatically covered except employees who administer anesthesia, nurse midwives, physician/surgeon assistants, psychologists, medical doctors, osteopaths, podiatrists, chiropractors, and dentists."). Thus,

6

Dr. Schlesinger clearly comes within the MAG Mutual policy's Blanket Employee Endorsement.

### B.     Blanket Endorsement

MAG Mutual additionally contends, however, that even if Dr. Schlesinger is one of the employees to be covered under the Blanket Employee Endorsement, the policy still precludes his coverage because even though he may have been acting within the scope of his employment at the time he treated Dawn Weaks, he was not "supervised" by Eyesight Associates while doing so.   MAG Mutual Motion, at 9.   MAG Mutual asserts that Dr. Schlesinger's Employment Contract did not reserve the right to control Dr. Schlesinger's optometric treatment of his patients because such matters are dictated by Georgia statutes pertaining to the practice of optometry.    Because Georgia law generally requires that supervising an employee includes the right to control all manner of an employee's performance, MAG Mutual contends Dr. Schlesinger was not being supervised by Eyesight Associates at the time he cared for Dawn Weaks.

There are few facts in the record concerning Dr. Schlesinger's employment with Eyesight Associates.   Dr. Schlesinger's Employment Contract states that Eyesight Associates has the "exclusive authority to determine who will be accepted as a patient by the practice, to determine the duties to be assigned to Employee outside of clinical practice and patient care, and the amount of fees to be charged any patient for professional services." *See* Employment Contract, Art. VIII.   The record also reflects that the jury in the *Weaks* case found that Dr.

7

Schlesinger was acting within the scope of his employment when he performed a negligent service upon Dawn Weaks.

MAG Mutual has presented no evidence to show that Eyesight Associates did not supervise Dr. Schlesinger as its employee while he was treating Ms. Weaks. Rather, the evidence shows that Eyesight Associates dictated which patients Dr. Schlesinger would see and what rates would be charged. Furthermore, there is no evidence that Dr. Schlesinger saw Ms. Weaks outside of his work with Eyesight Associates. Rather, the evidence in the personal injury case reflected that Ms. Weaks was a patient at Eyesight Associates and saw several of the optometrists there, including Dr. Schlesinger. The fact that there are other standards set by law regulating the practice of optometry does not preclude the possibility of a supervisor/employee relationship between Dr. Schlesinger and Eyesight Associates. That Eyesight Associates did not tell Dr. Schlesinger which course of treatment to provide or which diagnosis to make does not preclude the fact that Eyesight Associates supervised all other aspects of his employment. "Supervision" is not defined in MAG Mutual's Blanket Employee Endorsement, and nothing in the policy mandates that "supervision" include dictation of the medical care provided to a patient. MAG Mutual also has not presented any case law to the court which would support such a definition. Finally, as American Casualty notes, if the court were to agree with MAG Mutual's position that no optometric employee of a professional corporation could ever be supervised, then the MAG Mutual Blanket Employee Endorsement covering "medical professional employees" would provide coverage

to no one. For the foregoing reasons, the court finds that Eyesight Associates supervised Dr. Schlesinger such that he is covered by the Blanket Employee Endorsement in MAG Mutual's policy.

### C. "Other Insurance" Clauses

There is no dispute that under Georgia law, where two policies have identical "other insurance" clauses, the clauses are irreconcilable and cancel each other out, and the entire loss is pro-rated among the insurers according to their policy limits. *See*, *e.g.*, *Southern Home Insurance Co. v. Willoughby*, 124 Ga. App. 162 (1971). MAG Mutual, however, contends that the clauses in the insurance policies here are not identical, and MAG Mutual's policy is an "excess" policy while American Casualty's is a "primary" policy.[1] The court agrees. The American Casualty policy "other insurance" clause states:

> If you have other insurance which applies to the loss, the other insurance must pay first. It is the intent of this policy to apply to the amount of loss which is more than the limit of liability of the other insurance. We will not pay more than our limit of liability.

The MAG Mutual Blanket Employee Endorsement states:

> This coverage is excess over other valid professional liability insurance which specifically names an individual or position.

---

[1] The court DENIES Plaintiff's motion to strike [14-1].

9

AO 72A
(Rev.8/82)

The coverage statement in MAG Mutual's Blanket Employee Endorsement is different than the MAG Mutual policy's general "other insurance" clause which states: "Insurance under this coverage is excess of and payable only after all other valid insurance and self-insurance limits of coverage have been exhausted paying settlements and judgments." If the court were comparing MAG Mutual's general "other insurance" clause to American Casualty's clause, it might find that they were identical and irreconcilable. However, Dr. Schlesinger's coverage on the MAG Mutual policy is only under the Blanket Employee Endorsement. Thus, it is that endorsement's limitation which is the relevant comparator.

The court finds that the sensible reading of the policy is that it is generally designed to insure Eyesight Associates for medical malpractice claims brought against it. Eyesight Associates and MAG Mutual then also contracted for an endorsement that allows for coverage of employees of Eyesight Associates, but only after the insurance those employees have individually obtained has been exhausted. The coverage statement in the Blanket Employee Endorsement achieves that result.

The $750,000 judgment rendered against Dr. Schlesinger and Eyesight Associates jointly and severally is under the $1,000,000 policy limit set forth in Dr. Schlesinger's individual American Casualty policy, and thus there would be no need for MAG Mutual's coverage of Dr. Schlesinger to kick in.

Furthermore, the joint and several judgment against Eyesight Associates does not require a contrary result. The only evidence in the record before the court shows that Eyesight

10

Associates' liability is based on the fact that Dr. Schlesinger was acting as its agent or employee. Georgia law makes a distinction between the liability of Dr. Schlesinger and Eyesight Associates under these circumstances. Where there is an "active" tortfeasor, like Dr. Schlesinger, and a tortfeasor whose liability is based solely on its status as an employer of the "active" tortfeasor, as Eyesight Associates' is, the active and vicarious tortfeasor are treated as one for the purposes of determining contribution. *See St. Paul Fire & Marine Insurance v. MAG Mutual Insurance Co.*, 209 Ga. App. 184 (1993); *Gay v. Piggly Wiggly Southern*, 183 Ga. App. 175 (1987) (the "negligent employee and his vicariously liable employer are not 'joint tortfeasors' in the classic sense"). In *St. Paul Fire & Marine*, a patient brought a malpractice suit against his doctor, the doctor's professional corporation, and the hospital where the patient was treated. The suit was settled with the hospital paying one-third and the insurer for the doctor and the corporation paying two-thirds. The doctor's and corporation's insurer brought suit against the hospital contending that the hospital should pay one-half of the settlement because the corporation was liable on the suit only as the doctor's employer. The court found that where there are multiple defendants and one or more is a defendant solely based on some vicarious relationship with the tortfeasor, the one guilty of the wrongdoing and the imputed party shall be treated as one party when determining the pro rata share of contribution. *Id.* at 186.

Applying the logic of *St. Paul Fire & Marine*, then, Dr. Schlesinger and Eyesight Associates should be treated as one for the purposes of satisfying the judgment. Dr.

11

Schlesinger's actions resulted in the medical malpractice claim. He is specifically insured by American Casualty. MAG Mutual's policy for Eyesight Associates applies to a judgment against Dr. Schlesinger only if the judgment exceeds the limits of the policy which specifically names Dr. Schlesinger as an insured. Here, the judgment did not exceed those limitations.

For the foregoing reasons, the court GRANTS Defendant's motion for summary judgment [8-1] and DENIES Plaintiff's motion for summary judgment. Because the court grants Defendant's motion for summary judgment, the court DENIES AS MOOT Defendant's motion for oral argument [17-1].

### III.    Conclusion

The court DENIES Plaintiff's motion for summary judgment [7-1]; GRANTS Defendant's motion for summary judgment [8-1]; DENIES Plaintiff's motion to strike [14-1]; and DENIES AS MOOT Defendant's motion for oral argument [17-1].

**IT IS SO ORDERED** this 12th day of January 2006.

    s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE